UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| SMART WORLD TECHNOLOGIES, LLC, et al., | Bankruptcy Court Case Nos. 00-41645 through 00-41647 (JMP) |
| Debtors. | (Substantively Consolidated) |
| RIKER, DANZIG, SCHERER, HYLAND & PERRETTI LLP, | District Court Case No. 07 cv 03603 (MGC) |
| Appellant, | |
| vs. | |
| OFFICIAL COMMITTEE OF UNSECURED CREDITORS, et al., | |
| Appellees. | |

APPELLANT'S REPLY BRIEF IN SUPPORT OF (I) REVERSAL OF ORDER ALLOWING FINAL COMPENSATION AND REIMBURSEMENT OF EXPENSES AND DISBURSEMENTS DATED MARCH 23, 2007, AND ENTERED ON MARCH 28, 2007, AND (II) ALLOWANCE OF FEES PURSUANT TO CONTINGENCY FEE AGREEMENT APPROVED UNDER 11 U.S.C. § 328(a).

Of Counsel:

Glenn D. Curving (GC-3464)
J. Alex Kress (JK-7189)

On the Brief:

Seth H. Lieberman (SL-4880)

RIKER, DANZIG, SCHERER, HYLAND
  & PERRETTI LLP
Headquarters Plaza
One Speedwell Avenue
Morristown, NJ 07962-1981
(973) 538-0800
    -and-
500 Fifth Avenue
New York, NY 10110
(212) 302-6574

*Pro se*, for services rendered as Special Litigation Counsel to Debtors and Debtors-in-Possession, Smart World Technologies, LLC, Freewwweb, LLC and Smart World Communications, Inc.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................ ii

PRELIMINARY STATEMENT ................................................................... 1

LEGAL ARGUMENT ............................................................................... 2

I.    THE BANKRUPTCY COURT CORRECTLY DETERMINED THAT RIKER DANZIG'S CONTINGENCY FEE ARRANGEMENT WAS PRE-APPROVED UNDER BANKRUPTCY CODE § 328(a). ......................................... 2

    A. Case Law Establishes that the Key Determination is Whether the Bankruptcy Court Knowingly and Intentionally Pre-Approved the Professional's Contingency Fee Retention Under Bankruptcy Code § 328(a). ................................................................................................ 2

    B. The Record Unequivocally Demonstrates that the Bankruptcy Court Knowingly and Intentionally Required and Pre-Approved Riker Danzig's Contingency Fee Arrangement Under Bankruptcy Code § 328(a) at the Outset of the Juno Litigation. ........................................................... 4

II.   LIKE THE BANKRUPTCY COURT, THIS COURT MUST REJECT THE COMMITTEE'S CONTENTION THAT RIKER DANZIG WAS NOT ENTITLED TO COMPENSATION BECAUSE IT DID NOT "ENGINEER" THE SETTLEMENT. ..................................................................................... 10

III.  THIS COURT ALSO MUST REJECT THE COMMITTEE'S CONTENTION THAT THE BANKRUPTCY COURT PROPERLY DISREGARDED RIKER DANZIG'S PRE-APPROVED CONTINGENCY FEE ARRANGEMENT. ............ 14

    A. The Committee Continually Misstates the Appropriate Standard by Which Improvidence is Measured Under the Bankruptcy Code. ................................ 14

    B. One of the Key Cases Cited by the Bankruptcy Court Has Been Reversed. ....... 15

    C. The Additional Cases Cited by the Committee Do Not Support the Retrospective Review Conducted by the Bankruptcy Court. ............................... 18

    D. The Committee Fails to Rebut Riker Danzig's Contentions that All of the "Unforeseeable Developments" Cited by the Bankruptcy Court Were Capable of Being Anticipated. ........................................................................ 19

CONCLUSION ....................................................................................... 23

# TABLE OF AUTHORITIES

## CASES

In re Ciapetta,
        159 B.R. 152 (Bankr. E.D. Pa. 1993) ............................................... 18, 19

Donaldson Lufkin & Jenrette Sec. Corp. v. Nat'l Gypsum Co. (In re Nat'l
        Gypsum Co.),
        123 F.3d 861 (5th Cir. 1997) ...................................................................3

In re Financial News Network, Inc.,
        34 B.R. 732 (Bankr. S.D.N.Y. 1991).....................................................18

Friedman Enters. v. B.U.M. Int'l, Inc. (In re B.U.M. Int'l, Inc.),
        229 F.3d 824 (9th Cir. 2000) ....................................................................3

F.V. Steel & Wire Co. v. Houlihan Lokey Howard & Zukin Capital, L.P.,
        350 B.R. 835 (E.D. Wis. 2006) ..........................................................4, 16

In re Gilbertson,
        340 B.R. 618 (Bankr. E.D. Wis. 2006) ............................................ 15, 17

In re Gilbertson,
        No. 06-C-4610, 2007 U.S. Dist. LEXIS 11734 (E.D. Wis. Feb. 4,
        2007) ......................................................................................... 4, 16, 17

Henry v. Champlain Enters., Inc.,
        445 F.3d 610 (2d Cir. 2006) ...................................................................14

In re Lytton's,
        823 F.2d 395 (7th Cir. 1987) .................................................................3, 4

Nischwitz v. Miskovic (In re Airspect Air, Inc.),
        385 F.3d 915 (6th Cir. 2004) ................................................................2, 3

In re Nucorp Energy Inc.,
        764 F.2d 655 (9th Cir. 1985) ....................................................................9

In re Omegas Group, Inc.,
        195 B.R. 875 (Bankr. W.D. Ky. 1996) ............................................ 18, 19

In re Port Royal Land & Timber Co.,
        105 B.R. 72 (Bankr. S.D. Ala. 1989)......................................................18

In re Port Royal Land & Timber Co. v. Berkowitz, Lefkovits, Isom & Kushner
          (In re Port Royal Land & Timber Co.),
          924 F.2d 208 (11th Cir. 1991), ............................................................. 18

Smart World Techs., LLC v. Juno Online Servs., Inc. (In re Smart World Techs.,
          LLC),
          423 F.3d 166 (2d Cir. 2005) ................................................................. 21

In re XO Commc'ns, Inc.,
          323 B.R. 330 (Bankr. S.D.N.Y. 2005) .................................................... 15

Zolfo, Cooper & Co. v. Sunbeam-Oster Co., Inc.,
          50 F.3d 253 (3d Cir. 1995) ...................................................................... 3

## STATUTES

11 U.S.C. § 328(a) ............................................................................... *passim*

## MISCELLANEOUS

Black's Law Dictionary (8th ed. 2004).......................................................... 12

David Ziemer, Case Analysis: Contingency Fees,
          20 Wis. L.J. 15 (Apr. 12, 2006) ......................................................... 15, 16

iii

## PRELIMINARY STATEMENT

Contrary to the Committee's extensive and irrelevant arguments and assertions, this appeal is not about the nature and substance of the disputes between Juno and the Debtors, the reasonableness of the settlement incorporated into the Confirmed Plan, or who "engineered" the settlement.  Nor is it about the strategies and actions Riker Danzig undertook at its clients' direction in pursuing the Debtors' claims and seeking to increase the ultimate recovery by the estates, or the amount of time Riker Danzig expended in those activities.  Rather, it is about whether the Bankruptcy Court approved Riker Danzig's fee arrangement under 11 U.S.C. § 328(a) at the outset of the case, whether that arrangement contemplated payment at a fixed percentage of amounts received from Juno, and whether there were "developments not capable of being anticipated" which rendered that pre-approved arrangement "improvident."

On these central elements, the Committee's brief — laced as it is with a woeful lack of citation to the factual record, misrepresentations of the "facts" it does recite, and an inexplicable mischaracterization of the applicable legal standards — ultimately fails to demonstrate that Riker Danzig was not pre-approved as § 328(a) counsel or that unforeseeable developments rendered Riker Danzig's retention improvident.  To the contrary, the record and case law demonstrates that (1) Riker Danzig was pre-approved under 11 U.S.C. § 328(a) on the terms of the Revised Contingency Proposal, (2) there were no unforeseeable developments which rendered this retention improvident, and (3) the retention arrangement entitled Riker Danzig to its expenses ($73,981.18), 33 1/3% of the first $1,500,000, and 37% of the remaining recovery obtained from Juno, for a total award of $2,396,608.14.

1

## LEGAL ARGUMENT[1]

I.   **THE BANKRUPTCY COURT CORRECTLY DETERMINED THAT RIKER DANZIG'S CONTINGENCY FEE ARRANGEMENT WAS PRE-APPROVED UNDER BANKRUPTCY CODE § 328(a).**

Neither the case law, nor the record, permits this Court to reverse the Bankruptcy Court's factual determination that, in November 2000, at the outset of the Debtors' litigation with Juno, Riker Danzig was retained on a contingency fee basis, pre-approved under Bankruptcy Code § 328(a).  Instead, where, as here, the record established that the parties and the Court were aware of the terms of the arrangement, considered their reasonableness, and ultimately approved those terms, they cannot be revisited.  The Committee's assertions to the contrary are legally unavailing and devoid of any citations to the record.[2]

A.   **Case Law Establishes that the Key Determination is Whether the Bankruptcy Court Knowingly and Intentionally Pre-Approved the Professional's Contingency Fee Retention Under Bankruptcy Code § 328(a).**

While the Second Circuit has not yet addressed the issue, the four (4) circuits which have considered whether a counsel's retention was pre-approved under Bankruptcy Code § 328 require only that the bankruptcy court knowingly and intentionally authorized counsel's fee arrangement.  See Nischwitz v. Miskovic (In re

---

[1] Riker Danzig incorporates by reference the Statement of Facts set forth in the Appellant's Brief for (i) Reversal of Order Allowing Final Compensation and Reimbursement of Expenses and Disbursements dated March 23, 2007, and Entered on March 28, 2007 and (ii) Allowance of Fees Pursuant to Contingency Fee Agreement Approved Under 11 U.S.C § 328(a) filed May 25, 2007 (Docket No. 6) (the "Appellant Brief").  Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Appellant Brief.

[2] The Committee's repeated lack of citation to the record in support of its assertions and purported "facts" is consistent throughout its Brief of Appellee/Cross-Appellant Official Committee of Unsecured Creditors of Smartworld [sic] Technologies, LLC et al. (the "Appellee Brief").  Rather than rebut every unsupported or erroneous assertion, Riker Danzig has addressed only those central to this appeal.  Its decision not to burden this Court with other extraneous matters is not an acceptance of any "fact."

2

Airspect Air, Inc.), 385 F.3d 915, 920-22 (6th Cir. 2004) (reviewing the totality of the circumstances in examining "the bankruptcy court's affirmative authorization of payment terms pursuant to § 328");[3] Friedman Enters. v. B.U.M. Int'l, Inc. (In re B.U.M. Int'l, Inc.), 229 F.3d 824, 829 (9th Cir. 2000) (focusing on whether "the bankruptcy court intended to reserve for itself more than simply an 'improvident circumstances' review under 11 U.S.C. § 328"); Donaldson Lufkin & Jenrette Sec. Corp. v. Nat'l Gypsum Co. (In re Nat'l Gypsum Co.), 123 F.3d 861, 862-63 (5th Cir. 1997) (finding that order which "granted that approval 'upon the terms and conditions of that certain engagement letter dated April 16, 1991'" had "expressly approved the terms of the agreement" such that "the reasonableness of those terms, in the event of anticipated circumstances and performance was approved."); Zolfo, Cooper & Co. v. Sunbeam-Oster Co., Inc., 50 F.3d 253, 262 (3d Cir. 1995) (requiring that the "order expressly and unambiguously state specific terms and conditions (e.g. specific hourly rates or contingency fee arrangements) that are being approved" to "prevent[] courts from being bound to specific terms unintentionally.").

As at least two (2) courts have recognized, the Committee's reliance on In re Lytton's, 823 F.2d 395 (7th Cir. 1987) is misplaced. Lytton's arose from a retention, not a fee application. Lytton's, 832 F.2d at 396. It explored whether the attorney should be retained as contingency fee counsel, not whether it had been retained as

---

[3] While the Committee asserts that the instant appeal poses "the exact same facts under which the Sixth Circuit [decided] Airspect[,]" Appellee Br. at 28, the underlying facts in Airspect are materially distinct. Compare Airspect, 385 F.3d at 922 (acknowledging that (i) neither the retention application nor the retention order referred to § 328, (ii) the retention order failed to mention the contingency agreement and (iii) neither party invoked § 328 in briefing and arguing the objections to the professional's fee application), with the facts here as set forth in Point I-B, infra pp. 4-9.

contingency fee counsel.  Id.  As observed in F.V. Steel & Wire Co. v. Houlihan, Lokey

Howard & Zukin Capital, L.P.:

> Lytton[']s does not authorize a bankruptcy court that pre-
> approved a compensation arrangement under § 328(a) to
> subsequently review a request for compensation for
> reasonableness under § 330.

350 B.R. 835, 839 (E.D. Wis. 2006).  Accord In re Gilbertson, No. 06-C-4610, 2007

U.S. Dist. LEXIS 11734, at *8-9 n.3 (E.D. Wis. Feb. 4, 2007) (acknowledging that "in

In re Lytton's, [832 F.2d at 399-400,] the main issue was whether the bankruptcy

court's order was final (and therefore appealable); the creditor-appellant was simply

pointing to the court's approval of a contingency fee arrangement as proof of the

order's finality.").

As demonstrated below, and as determined by Judge Peck in the Fee

Ruling, see Fee Ruling Tr. at 14:12-17; J.A. A-1691, the record in this case makes clear

that, at the time of Riker Danzig's retention, Judge Blackshear required, and all of the

interested parties in this case understood, that Riker Danzig's retention was on a

contingency fee basis, which was reasonable and pre-approved.

**B.**     **The Record Unequivocally Demonstrates that the Bankruptcy Court Knowingly and Intentionally Required and Pre-Approved Riker Danzig's Contingency Fee Arrangement Under Bankruptcy Code § 328(a) at the Outset of the Juno Litigation.**

Here, Judge Blackshear clearly understood, intended and, in fact, required

that the approval of Riker Danzig's retention be on a contingency fee basis.  The

Committee's contention to the contrary is devoid of any citation to, let alone actual

support in, the record.

Contrary to the Committee's contention, the Retention Application specifically referred to Bankruptcy Code § 328 and to the proposal to approve a contingency fee. The Retention Application was based on Bankruptcy Code § 328:

> The Debtors wish to retain the law firm of Riker, Danzig, Scherer, Hyland & Perretti LLP (the "Firm"), as their Special Counsel in this Chapter 11 proceeding <u>pursuant to 11 U.S.C. §§ 327 and 328</u> and Fed. R. Bankr. P. 2014, to provide legal services . . . .

Exhibit A to Committee's Objection at 5, ¶ 7; J.A. A-1479 (emphasis added). It specifically referred to a contingency fee arrangement:

> 6. The firm [Riker Danzig] has agreed to compensation on a <u>contingency basis</u> in accordance with a letter dated October 31, 2000 annexed hereto. . . . 7. . . . [T]he Debtors are in need of counsel with sufficient resources to litigate the matters at hand with Juno on a <u>contingency basis</u>.

<u>Id.</u> at 6, ¶¶ 6 & 7; J.A. A-1480 to A-1481 (emphasis added).

In fact, Judge Blackshear had instructed the parties that he would not authorize the Debtors to retain special litigation counsel (<u>i.e.</u>, Riker Danzig) except on a contingency fee basis:

> MS. MAYERSON: Just so Your Honor's aware, in terms of the reasonableness, I think at one point very early in this case Your Honor had cautioned, I think at the time when you held the Debtors to one counsel instead of two co-counsel, that <u>you wouldn't consider bringing in an additional counsel unless it was a true contingency, not even a disguised contingency with payments along the way.</u>

Retention Hrg. Tr. at 28:16-22; J.A. A-0069 (emphasis added).

At the Bankruptcy Court hearing to approve Riker Danzig's retention, counsel to WorldCom[4] detailed the applicable terms to Judge Blackshear:

> That settlement, that proposal is embodied in the papers that everybody has received. Their proposal said – was they got their expenses off the top because those expenses are the obligations of the Debtor and they'll be satisfied first thing from the proceeds.
>
> Then out of the first million and a half they get a third. The purpose of that is to incentivize them to immediately get immersed in this case because we believe there are a lot of issues they'll face quickly during the holiday season. We want them in there immediately.
>
> Out of the next $6.5 million, there is a staged in progression. They get nothing if there is a settlement within six months; however, they will have gotten the $500,000 from the first million and a half, so there is still incentive to go in and do something quickly. They could still make a very nice fee for themselves.
>
> From six to nine months they get 20 percent [sic], 10 percent of that next thing and from nine months to 12 months they get twenty percent.
>
> The proposal we submitted to the Court and the writing that everyone has says; thereafter they get forty percent whereas their previous proposal had been 37 percent because they're not risking not getting anything on that $6.5 million. It jumped up to forty percent.
>
> We understood that Your Honor had a concern at the last hearing that this wasn't enough incentive for them to satisfy quickly and the U.S. Trustee had a concern that forty percent was too high, so we've continued to negotiate with them.
>
> What we've done is we've changed what happens after the first $8 million with respect to any income after the first $8

---

[4] WorldCom initially held itself out as the Debtors' principal secured creditor. It subsequently became the Committee's position that WorldCom did not have a perfected, secured claim. In any case, WorldCom was a substantial creditor asserting claims of $14 million to $25 million. <u>See</u> Confirmation Hrg. Tr. at 13:2-4; J.A. A-1141 ("On December 3, 2003, a few days prior to the Bar Date in this case, [WorldCom] filed a $24-plus million unsecured claim.").

> million, they get thirty-seven percent above the $8 million, if it's in the first eighteen months and three-three percent thereafter.
>
> We think that that layers in the incentive to do everything as quickly as possible and should meet everyone's concerns.

Retention Hrg. Tr. at 23:4 - 24:15; J.A. A-0064 to A-0065.

Even the U.S. Trustee's objection to Riker Danzig's retention recognized that the Debtors were invoking Bankruptcy Code § 328(a).  See U.S. Trustee's Objection to Retention (Exhibit "C" to the Committee's Objection) at ¶ 12, p. 4; J.A. A-1511.

Judge Blackshear, in rejecting the U.S. Trustee's Objection, acknowledged that he already had decided and would not retrospectively consider the reasonableness of the fees:

> I'm not going to review the time records of the individual merely because of the fact that he agreed to a contingency fee . . . if somebody is willing to work on a contingency basis, then all I say is the same as I said before, what happens if an individual's records demonstrate that he should be paid more?  Are we going to pay him more?  Are we going to make him live by his contingency fee request?

Retention Hrg. Tr. at 27:6-8; 27:12-16; J.A. A-0068.  However, at the request of the U.S. Trustee, Judge Blackshear required Riker Danzig to file a fee request consistent with the terms and calculation of the agreed-upon contingency proposal:

> MS. SCHRAGE:  Your Honor, you will require they file a fee application in accordance with the local rules?
>
> THE COURT:  You're going to require that?
>
> MS. SCHRAGE:  I'm requesting that.
>
> THE COURT:  Oh, you're requesting that.  They will do that.  They will put in a fee application.

7

> MS. MAYERSON:  Your Honor, just to clarify.  The fee
> application will be consistent with the contingency fee
> agreement and lay out what the proceeds were, et cetera, as
> opposed to the typical fee application.
>
> THE COURT:  Absolutely.

Retention Hrg. Tr. at 27:24-25 - 28:1-9; J.A. A-0068 to A-0069 (emphasis added).

In fact, the Retention Order expressly provides that Riker Danzig will be paid "in accordance with the within application [which, as noted above, referenced both § 328(a) and a contingency fee] and the letter of James S. Rothschild Jr., Esq. dated November 15, 2000, annexed hereto and made a part hereof[.]"  J.A. A-1443 to A-1444. This latter provision flatly contradicts the Committee's bald, but false, assertion "that the [Rothschild] letter was never 'incorporated' into the [retention] order."  Appellee Br. at 34.[5]

As the foregoing citations demonstrate, the circumstances surrounding Riker Danzig's retention meet even the most restrictive of the standards adopted by the circuit courts.  The strictest standard (specific reference to pre-approval and § 328(a) by the court) is met by the reference to Bankruptcy Code § 328(a) in the Retention Application and the specific incorporation of the Revised Contingency Proposal.  The Committee's arguments to the contrary — especially its suggestion that the Retention Order was a conditional approval of Riker Danzig's fee arrangement — have no basis in fact or law and are but a feeble attempt to make Riker Danzig subsidize what the

---

[5] The Committee also complains that Riker Danzig did not include its detailed time records.  Appellee Br. at 38.  However, this is because that requirement only was evident from the Retention Hearing Transcript which Riker Danzig did not obtain until after filing the Fee Application.  Significantly, consistent with the Court's directive, see Retention Hrg. Tr. at 28:10-12; J.A. A-0069, Riker Danzig provided its detailed time records to the Committee and the U.S. Trustee, the only parties who requested them.  Thus, the Committee's complaints should not derail this Court.

Committee, in a complete "about-face," apparently now considers to be an inadequate settlement.

       The Committee's real concern in objecting to Riker Danzig's fees and seeking to reduce them by way of this appeal is the inadequacy of its own settlement in this matter and its impact on creditor recoveries. <u>See</u> Appellee Br. at 3 n.1. But, as courts have recognized, any consideration of the impact of a fee award on the recovery by unsecured creditors is inappropriate, especially where, as here, the professional was retained on a specific, pre-approved, arrangement. <u>See</u> <u>In re Nucorp Energy Inc.</u>, 764 F.2d 655, 658 (9th Cir. 1985) ("Appellants' claim that millions of dollars will be removed from the estates provides absolutely no justification whatsoever for changing the pre-approved terms of [the professional's] fee."). Neither the Bankruptcy Court, nor especially an appellate court such as this Court, should revisit the terms of Riker Danzig's fee arrangement given the Debtors' invocation of, and adherence to, Bankruptcy Code § 328(a). This is especially true since the Committee was well aware of the pre-approved fee arrangement at the time of the settlement and still sought approval of the settlement over the Debtors' contention, which was credited by the Bankruptcy Court, that a greater recovery was possible. <u>See</u> Confirmation Hrg. Tr. at 212:20-21; J.A. A-1340 ("The pressure of trial might lead to an enhanced settlement offer. That is certainly a possibility.").

       For all the foregoing reasons, this Court cannot reverse the Bankruptcy Court's factual determination that Riker Danzig was pre-approved, under § 328(a), on the terms of the Revised Contingency Proposal.

9

## II. LIKE THE BANKRUPTCY COURT, THIS COURT MUST REJECT THE COMMITTEE'S CONTENTION THAT RIKER DANZIG WAS NOT ENTITLED TO COMPENSATION BECAUSE IT DID NOT "ENGINEER" THE SETTLEMENT.

The same method of mischaracterization that leads the Committee to argue that Riker Danzig was not pre-approved as contingency fee counsel under Bankruptcy Code § 328(a) underlies the Committee's vacuous contention that Riker Danzig was to be paid only if it alone negotiated the settlement or obtained a judgment which provided a recovery to the Debtors' estates. Neither the fee arrangement approved by the Bankruptcy Court, nor the proceedings which led up to its entry, support this contention which, in any case, was another factual determination by the Bankruptcy Court.

In fact, the Revised Contingency Proposal speaks only in terms of amounts "obtained" from Juno:

> Riker Danzig will take the case in consideration of the following payment terms: 1) Riker Danzig will be paid all expenses off of the top any recovery and, after payment of expenses, will receive 33-1/3% of the first $1,500,000 <u>obtained from Juno</u>[6]; 2) Riker Danzig's share of funds in excess of $1,500,000 but less than $8 Million will be (a) 0% if the litigation lasts less than 6 months, (b) 10% if the litigation lasts from 6 months to 9 months, (c) 20% if the litigation lasts between 9 months and 12 months, (d) 37% if the litigation lasts more than 12 months; and 3) Riker Danzig will receive 37% of all funds received in excess of $8 Million.

Revised Contingency Proposal at ¶ 1 (footnote in original) (emphasis added); J.A. A-1443 to A-1444.

The colloquy between the Bankruptcy Court and WorldCom's counsel at the Retention Hearing demonstrates the dual-track approach which the Bankruptcy

---

[6] This would not include any funds obtained from Juno prior to our retention.

Court approved, but which the Committee — whose counsel actively participated in the

Retention Hearing and the negotiation of the Revised Contingency Proposal — ignores

in this appeal and, in any case, was addressed by the staged increase in Riker Danzig's

contingency percentage:

> MS. MAYERSON:  I'll say Your Honor, Riker Danzig has been very cooperative with the creditors trying to come up with a program the creditors can buy into.
>
> \* \* \*
>
> [A]s you know, we have been involved in settlement negotiations.  There is nothing about bringing Riker Danzig on that prevents the Creditors Committee from continuing those negotiations and if we can do something quickly, they would get a huge windfall.  So, we were able to negotiate something with them that gave them an incentive to get into the case and get totally immersed in it quickly, but still reserve for the estate if we were able to get a settlement without too much effort on Riker Danzig's part.
>
> \* \* \*
>
> With this in place, we really feel it's a nice compromise because it gives the Creditors Committee an incentive to continue to try to get an amicable resolution.
>
> It gives Riker Danzig the incentive to litigate full force and get immersed in the case and gives everybody incentive to work towards a quick resolution; so, we believe it's in the best interests of the estate.

Retention Hrg. Tr. at 22:12-14; 22:19-25; 24:16-22; J.A. A-0062 to A-0064.[7]

The Committee's attempt to engraft a requirement of "success," in

addition to money "obtained," is a mischaracterization of the record.    While the

Bankruptcy Court did refer to the concept of "success," it did so <u>solely</u> in the context of

---

[7] Significantly, neither this recitation, nor the terms of the Revised Contingency Proposal, contemplate Riker Danzig "step[ping] down" as the Committee suggests.  <u>See</u> Appellee Br. at 14.

determining the reasonableness of the contingency fee arrangement, which would be paid out of monies obtained or recovered:

> THE COURT:    The contingency fee is [sic] basically addresses the reasonableness . . . .
>
> * * *
>
> If he's willing to take that chance, on success being paid and unsucccess not getting anything, that to me addresses the reasonableness of his fee. . .

Retention Hrg. Tr. at 26:8-9; 26:18-21; J.A. A-0067.

Significantly, the definition of a "contingent fee" demonstrates the absurdity of the Committee's position; Black's Law Dictionary defines "contingent fee" as:

> [a] fee charged for a lawyer's services only if the lawsuit is successful <u>or is favorably settled out of court.</u>

<u>Black's Law Dictionary</u> 338 (8th ed. 2004) (emphasis added).

Positing a slightly different scenario further demonstrates the absurdity of the Committee's position.  Under the Committee's theory, the Committee could have deprived Riker Danzig of <u>any</u> fee simply by allowing Riker Danzig to engage in a complex legal and factual investigation, incurring over one million dollars of time and expenses, then, at the last minute, taking advantage of Riker Danzig's efforts and negotiating a settlement without Riker Danzig's involvement.  It is no different that Riker Danzig incurred its fees and costs while the Committee also was pursuing a settlement.  Moreover, it is impossible in a multi-party litigation to determine whose efforts "engineered" a settlement — nor did the Bankruptcy Court even seek to do so here, because it was not required to under the approved arrangement.

The foregoing makes clear that Riker Danzig was entitled to compensation whether it "engineered" the settlement or not. "Success" was a recovery by the estate; any other approach would lead to an absurd result. Instead, as the parties agreed, and the circumstances, the Retention Order, and the Revised Contingency Proposal provide, since there was a recovery "obtained from Juno," Riker Danzig is entitled to be paid its agreed-upon and Court-approved percentage.

### III. THIS COURT ALSO MUST REJECT THE COMMITTEE'S CONTENTION THAT THE BANKRUPTCY COURT PROPERLY DISREGARDED RIKER DANZIG'S PRE-APPROVED CONTINGENCY FEE ARRANGEMENT.

The Committee mischaracterizes the controlling legal standard by erroneously focusing on what <u>was</u> or <u>was not</u> anticipated rather than what <u>could have been</u> anticipated. In doing so, the Committee reaches for cases which are factually distinguishable from the situation here and ignores a district court decision reversing one of the key cases relied on by the Bankruptcy Court. In the end, the Committee completely fails to show that any of the factors cited by the Bankruptcy Court in rejecting Riker Danzig's pre-approved fee arrangement were unforeseeable or rendered the retention improvident.[8]

### A. The Committee Continually Misstates the Appropriate Standard by Which Improvidence is Measured Under the Bankruptcy Code.

As explained in detail in the Appellant Brief, Bankruptcy Code § 328(a) only allows modification of a pre-approved fee arrangement "based on developments not capable of being anticipated." 11 U.S.C. § 328(a). Yet, the Committee nevertheless repeatedly reiterates to this Court its erroneous reading of the applicable § 328(a) standard. <u>See</u> Appellee Br. at 32 (arguing "that numerous circumstances, <u>unforeseen</u> at the time of the retention, did require an adjustment to the fees requested by Riker.") (emphasis added)); <u>see id.</u> at 29 (manipulating the § 328(a) standard to be whether certain events were "<u>reasonably</u> capable of being anticipated . . .") (emphasis added);

---

[8] Unlike the Committee in the arguments addressed in Points I and II <u>supra</u>, Riker Danzig is not limited by the "clearly erroneous" standard in challenging the Bankruptcy Court's rulings here. Riker Danzig does not challenge the Bankruptcy Court's factual determinations, rather it challenges the Bankruptcy Court's application of the applicable standard to the facts as determined by the Bankruptcy Court. Thus, unlike the Committee's cross-appeal, Riker Danzig's appeal is subject to de novo review by this Court. <u>See, e.g.</u>, <u>Henry v. Champlain Enters., Inc.</u>, 445 F.3d 610, 617-18 (2d Cir. 2006) ("The district court's application of law to th[e] facts . . . is subject to *de novo* review.").

see id. at 33 (misstating the required showing to include events "unanticipated" and "not reasonably anticipated").

Despite the Committee's ongoing confusion, the statutory language expressly establishes that the Bankruptcy Court could award Riker Danzig compensation different from that which was provided in its approved fee agreement only if the "terms and conditions [of Riker Danzig's retention] prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions."  11 U.S.C. § 328(a) (emphasis added).  As set forth in the Appellant Brief, this is a heightened determination which is rarely met. Appellant Br. at 22 (citing In re XO Commc'ns, Inc., 323 B.R. 330, 339 (Bankr. S.D.N.Y. 2005) ("[A] finding of improvidence pursuant to section 328 is a difficult determination to make[, and] . . . courts rarely disturb the original terms and conditions of a professional's employment.") (emphasis added)).  Therefore, this Court must reject the Committee's reliance on developments which it claims were "unforeseen" "unanticipated" or "not reasonably anticipated" because they do not meet the applicable § 328(a) standard, which requires "developments not capable of being anticipated."

**B.    One of the Key Cases Cited by the Bankruptcy Court Has Been Reversed.**

Among the handful of cases the Bankruptcy Court cited to justify its rejection of Riker Danzig's pre-approved fee agreement was the bankruptcy court decision in In re Gilbertson, 340 B.R. 618 (Bankr. E.D. Wis. 2006).  That decision has been severely criticized in commentary.[9]  More importantly, it recently was reversed on

---

[9]  See David Ziemer, Case Analysis: Contingency Fees, 20 Wis. L.J. 15, 9A (Apr. 12, 2006) ("Inexplicably, [Gilbertson] never even addresses the language of [§ 328(a)], or attempts to explain
(footnote continued…)

15

appeal to the district court.  <u>In re Gilbertson</u>, No. 06-C-4610, 2007 U.S. Dist. LEXIS

11734 (E.D. Wis. Feb. 4, 2007).  This reversal further supports Riker Danzig's request

that this Court similarly reject the Bankruptcy Court's reduction of Riker Danzig's fee

here.

Several of the observations by the <u>Gilbertson</u> district court are applicable

here.  For instance, the court there reiterated the validity of the "controlling precedent

[of] <u>F.V. Steel & Wire Co. v. Houlihan Lokey Howard & Zukin Capital, L.P.</u>, 350 B.R.

835 (E.D. Wis. 2006)[, wherein] the court held that absent unanticipatable

developments, a court may not modify, under § 330(a), a professional's compensation

arrangement that was pre-approved under § 328(a)."   <u>Gilbertson</u>, 2007 U.S. Dist.

LEXIS at *12-13 (citing <u>F.V. Steel</u>, 350 B.R. at 839).

The <u>Gilbertson</u> district court emphasized that, as here, the bankruptcy

court cited events which "might have been <u>unanticipated</u> (by the court and/or by [the

professional]), <u>but that is not the test</u> [under § 328(a)]."   <u>Gilbertson</u>, 2007 U.S. Dist.

LEXIS at *15. (emphasis added).  Instead, as the <u>Gilbertson</u> district court held, "the

contingent fee could be modified only upon a finding that <u>unanticipatable developments</u>

had occurred subsequent to the court's approval of the application[.]"   <u>Id.</u> (emphasis

added).  The <u>Gilbertson</u> district court cautioned that hindsight consideration must be

rejected where there has been § 328(a) pre-approval:

> When counsel is successful, the contingent fee can appear
> excessive in hindsight, but … the statutory language [of

---

why the reasoning of the Fifth Circuit in <u>Daniels v. [Barron]</u>, 325 F[.]3d 690 (5th Cir. 2003), is
erroneous . . . . [A]ttorneys retained by trustees on a contingency fee basis, who have their fees reduced
merely because they obtained a quick recovery for the estate, should feel <u>confident on appeal</u> that they
can recover the fees originally agreed to, <u>notwithstanding the decision in this case</u>." (emphasis added)).

§ 328(a)] clearly allows a court to approve a contingent fee arrangement for a professional employed by the trustee. And if it does so without unambiguously expressing an intent to review under the reasonableness standard of § 330, the court may not subsequently reform the compensation absent developments that could not have been anticipated at the time of approval.

Id. at *16.

Ironically, Gilbertson involved a reduction in fees resulting from a "quick and easy" settlement. Gilbertson, 340 B.R. at 623. In essence, there, the bankruptcy court felt that the counsel was getting too great a fee for too little work. Id. The Gilbertson professional's "contingency fee was reduced to an hourly rate fee when it took less than one month and only 2.7 hours of time were billed to resolve a fraudulent transfer action." Fee Ruling Tr. at 13:7-10; J.A. A-1690. In contrast, here, the Bankruptcy Court and the Committee on appeal essentially seek to reduce Riker Danzig's fees because it did too much. Id. at 15:7-9; J.A. A-1692.

Neither grounds meet the statutory test and underlying policy. Unless this Court, like the district court in Gilbertson, reverses the Bankruptcy Court, contingency fee counsel approved under § 328(a) will face a "heads I win, tails you lose" situation where they will be deprived of the benefits of their pre-approved fee arrangement based on hindsight. Whether this happens because the attorney settled a dispute too quickly, see Gilbertson, 340 B.R. at 622, or because the attorney, purportedly, spent too much time litigating that claim, see Fee Ruling Tr. at 15:7-9; J.A. A-1692, this is the antithesis of the purpose of Bankruptcy Code § 328(a). See Appellant Br. at 33-35.

Thus, like the district Court in Gilbertson, this Court must reverse the Bankruptcy Court because it failed to identify any "developments not capable of being anticipated." 11 U.S.C. § 328(a).

17

C.    **The Additional Cases Cited by the Committee Do Not Support the Retrospective Review Conducted by the Bankruptcy Court.**

The new cases cited by the Committee, In re Financial News Network, Inc., 34 B.R. 732 (Bankr. S.D.N.Y. 1991); In re Omegas Group, Inc., 195 B.R. 875 (Bankr. W.D. Ky. 1996); and In re Ciapetta, 159 B.R. 152 (Bankr. E.D. Pa. 1993), do not allow this Court to affirm the Bankruptcy Court's disregard of the terms of Riker Danzig's retention agreement.  Each of these cases involved an agreement which the Bankruptcy Court never approved, either because the agreement predated the bankruptcy filing or because it was not properly presented to the court.

For example, Financial News actually addressed the terms of a retention agreement entered into between a debtor and professional pre-petition.  Fin. News, 34 B.R. at 733.  As a result, the terms of that retention agreement were never pre-approved by the Financial News court.  Id. at 736-37 (acknowledging that the professional rendered its services during the period prior to the bankruptcy filing and without court approval).  Further undermining Financial News is its reliance on In re Port Royal Land & Timber Co., 105 B.R. 72 (Bankr. S.D. Ala. 1989), which was subsequently vacated and remanded by the circuit court.  See In re Port Royal Land & Timber Co. v. Berkowitz, Lefkovits, Isom & Kushner (In re Port Royal Land & Timber Co.), 924 F.2d 208 (11th Cir. 1991).

The Committee's reference to Omegas is equally misplaced.  First, the portion of the Omegas decision cited by the Committee is actually a quotation from the Financial News decision distinguished above.  Omegas, 195 B.R. at 880.  Beyond this, Omegas dealt with an increase in compensation to the trustee's counsel at the time of his fee application.  Id.  This rare augmentation of the trustee's counsel's fees is

inapplicable to the instant case, where the Bankruptcy Court reduced, rather than increased, Riker Danzig's fees on account of developments that unquestionably were capable of being anticipated.  <u>See</u> Appellant Br. at 23-32.

Finally, <u>Ciapetta</u> also is unavailing to the Committee.  There, the bankruptcy court mistakenly failed to require the trustee's counsel to recite the terms of its contingency fee arrangement in the retention application or the retention order. <u>Ciapetta</u>, 159 B.R. at 157.  Instead, the retention order included general, boilerplate language which mandated the trustee's counsel to file a fee application to be reviewed and potentially adjusted by the court.  <u>Id.</u> at 154.  Most significantly, however, despite requiring the fee application, and despite the lack of a pre-approved contingency fee, the <u>Ciapetta</u> court ultimately allowed the trustee's counsel its one third contingency fee. <u>Id.</u> at 158.

In the instant case, the terms of Riker Danzig's retention were disclosed, objected to by the U.S. Trustee, fully vetted and then approved by the Bankruptcy Court in the Retention Order.  <u>See</u> J.A. A-0123 to A-0124.  Hence, this case is in a wholly different category than the three (3) cases cited by the Committee for the proposition that the Bankruptcy Court could alter Riker Danzig's contingency fee arrangement.

**D.    The Committee Fails to Rebut Riker Danzig's Contentions that All of the "Unforeseeable Developments" Cited by the Bankruptcy Court Were Capable of Being Anticipated.**

In the Appellant Brief, Riker Danzig explains, in detail, how the Bankruptcy Court misstepped in its attempt to find events that could not have been anticipated.  <u>See</u> Appellant Br. at 23-32.  The Committee does little to resuscitate the Bankruptcy Court's conclusions.  Instead, the Committee spends little more than two

(2) pages of its brief (Appellee Br. at 32-34) in an unsuccessful attempt to show developments which could not have been anticipated.

First, the Committee is quick to dismiss Riker Danzig's examples of the foreseeability of appeals and disputes, arguing that they did not involve counsel retained under § 328(a).  <u>See</u> Appellee Br. at 32-33.  But whether appeals are foreseeable in litigation, and whether disputes over the value of a debtor's assets are foreseeable in bankruptcy, are not a function of whether the counsel involved was retained under § 328(a).  <u>See</u> Appellant Br. at 27-29.  Instead, what is essential to those decisions is how they demonstrate that both appeals and value disputes are "capable of being anticipated" in any bankruptcy litigation.

Second, the Committee fails to rebut any of the legislative history and policy arguments detailed in the Appellant Brief.  <u>See id.</u> at 33-35.  Instead, the Appellee Brief ignores the reality that the Bankruptcy Court's Fee Ruling contradicts the legislative intent behind § 328(a).  Through the Committee's silence, this Court must conclude that the Committee found no basis in the legislative history to dispute that the type of hindsight analysis embodied in the Fee Ruling is exactly what Congress sought to avoid by codifying § 328(a) to permit pre-approval of contingency fee arrangements.  <u>See id.</u> at 35.

Finally, the few instances of alleged "unforeseeable" developments actually cited by the Committee are, in fact, clearly foreseeable events.  For example, while the Committee contends that it could not have been anticipated that Riker Danzig would oppose the proposed Juno settlements, <u>see</u> Appellee Br. at 32, it certainly was foreseeable that the Debtors' principals might object and seek a greater recovery for the estates and that Riker Danzig, as attorneys, would follow these directions of its clients.

See Appellant Br. at 33-35.[10]   Even the Bankruptcy Court recognized that it was foreseeable that Riker Danzig would employ any ethically-sanctioned approach to augment the Debtors' estates:

> THE COURT:    That to me does not seem to be an unanticipated event.    That seems to me to be creative lawyering.
>
>                        * * *
>
> THE COURT:    I think that it's foreseeable that contingent fee counsel will do everything that it can reasonably do consistent with the canons of ethics to maximize the recovery for the estate.

Fee Application Hrg. Tr. at 26:25-27:2; 27:4-7; J.A. A-1651 to A-1652.  The Second Circuit likewise acknowledged that the Debtors and Riker Danzig were properly positioned to pursue the claim.  Smart World Techs., LLC v. Juno Online Servs., Inc. (In re Smart World Techs., LLC), 423 F.3d 166, 177, 179-80 (2d Cir. 2005).

The Committee's suggestion that it would not have consented to the Retention Order if it knew the Second Circuit would limit its standing is also a red herring.  See Appellee Br. at 33.  The Second Circuit's ruling only addressed the process and required diligence for achieving a settlement.  Smart World, 423 F.3d at 184.  It did not prevent the Committee from settling the action.  In fact, in the Confirmed Plan, the Bankruptcy Court approved a settlement proposed only by the Committee notwithstanding the Debtors' objections, proving that the Committee was not prevented from settling the Juno litigation, but it instead sought approval of the

---

[10] The Committee concedes as much.  Appellee Br. at 33 ("Riker Danzig contends that . . . it followed the direction of the Debtors' principals, a fact obviously capable of being anticipated.") (emphasis added).

Initial Settlement improperly before discovery was completed and without proposing a plan.

In short, nothing cited by the Committee (or, for that matter, the Bankruptcy Court) even remotely approaches a development not capable of being anticipated under § 328(a). As a result, the terms of Riker Danzig's retention could not be altered. Since the Bankruptcy Court undoubtedly did so, this Court must reverse its Order and direct allowance of Riker Danzig's fees in the amount established by the Revised Contingency Proposal.

## CONCLUSION

WHEREFORE, for all the foregoing reasons, as well as those cited in the Appellant Brief, Riker Danzig respectfully reiterates its request that the District Court (a) reverse the Final Fee Order, (b) enter judgment allowing Riker Danzig its full contingency fee of $2,396,608.14, (c) remand for further proceedings in accordance with this determination and (d) grant Riker Danzig such other and further relief as the Court deems equitable and just.

RIKER, DANZIG, SCHERER, HYLAND
  & PERRETTI LLP
*Pro se*, for services rendered as Special Litigation Counsel to Debtors and Debtors-in-Possession, Smart World Technologies, LLC, Freewwweb, LLC and Smart World Communications, Inc.


By:___/s/____Seth H. Lieberman_____
Glenn D. Curving (GC-3464)
J. Alex Kress (JK-7189)
Seth H. Lieberman (SL-4880)

Dated:  July 2, 2007