

**RIKER
DANZIG
SCHERER
HYLAND
PERRETTI**LLP

ATTORNEYS AT LAW

J. Alex Kress
Partner

Direct:
t: 973.451.8453
akress@riker.com
Reply to: Morristown

January 28, 2008

**VIA ELECTRONIC FILING AND OVERNIGHT MAIL**

The Honorable Miriam Goldman Cedarbaum
United States District Court
Southern District of New York
United States Courthouse
500 Pearl Street, Room 1330
New York, NY 10007-1312

Re:   In re Smart World Technologies, LLC, et al.
      Case Nos. 00-41645 through 00-41647 (JMP)

      Riker, Danzig, Scherer, Hyland & Perretti LLP v. Official
      Committee Of Unsecured Creditors, et al.
      District Court Case No. 07-cv-03603 (MGC)

Dear Judge Cedarbaum:

Please accept this letter in lieu of a more formal response to the letter brief dated January 18, 2008 (the "January 18 Letter Brief"), submitted by Laurence May, Esq., on behalf of the Committee. (Capitalized terms not defined herein shall have the meanings attributed to them in the parties' briefs.)

Although the question of counsel's independent duty to the estate was first raised during argument, as the Court recognized at the time, it does not impact the result in this appeal since the Bankruptcy Court did not find that either Riker Danzig or the Debtors breached any fiduciary duty. In fact, an examination of the record below demonstrates that the Bankruptcy Court recognized and commended Riker Danzig's vigorous representation of the Debtors in its good faith belief that it was seeking to maximize the recovery for the Debtors' estate. Moreover, a proper analysis of the Committee's cases, as opposed to the abstract principles which the Committee extracts from those cases, demonstrates that this duty was not implicated in Riker Danzig's actions.

Headquarters Plaza, One Speedwell Avenue, Morristown, NJ 07962-1981 • t: 973.538.0800 f: 973.538.1984
50 West State Street, Suite 1010, Trenton, NJ 08608-1220 • t: 609.396.2121 f: 609.396.4578
500 Fifth Avenue, New York, NY 10110 • t: 212.302.6574 f: 212.302.6628
London Affiliate: 33 Cornhill, London EC3V 3ND, England • t: +44 (0) 20.7877.3270 f: +44 (0) 20.7877.3271
www.riker.com

The Hon. Miriam Goldman Cedarbaum, U.S.D.J.
January 28, 2008
Page 2

I. The January 18 Letter Brief Raises Issues Not Addressed By the Bankruptcy Court and Extraneous to its Erroneous Conclusion That There Were "Developments Not Capable of Being Anticipated" Which Rendered Riker Danzig's Retention "Improvident."

As the Court noted during argument, the cases cited in the January 18 Letter Brief are not relevant if the Court determines, as it must, that Riker Danzig's retention was approved under Bankruptcy Code § 328 and was not "improvident based on developments not capable of being anticipated." 11 U.S.C. § 328(a).

Most significantly, the "unanticipatable developments" cited by the Bankruptcy Court in concluding that Riker Danzig's retention was improvident do not include that Riker Danzig breached any duty to the estate. See Fee Ruling Tr. at 14:18-15:18; J.A. A-1691 to A-1692; Appellant's Brief at 17.

In fact, prior to its statements at oral argument, the Committee did not raise the issue of counsel's presumed fiduciary duty. None of the cases cited in the January 18 Letter Brief were presented to the Bankruptcy Court nor to this Court in the Appellee's Brief. Nor did the Committee ever take any action to remove Riker Danzig or the Debtors' principals based on any alleged breach of fiduciary duty. As such, the Committee has waived these arguments. See, e.g., Coleman v. Thompson, 501 U.S. 722, 733 (1991) (referencing the "general rule that issues not raised on appeal are deemed waived"); see also, e.g., United States v. Quinones, Nos. 04-5554-cr(L), 04-5650-cr(CON), 2007 U.S. App. LEXIS 29866, at *59-60 n.14 (2d Cir. Dec. 28, 2007) (citing United States v. Pereira, 465 F.3d 515, 520 n.5 (2d Cir. 2006) (holding argument not raised on appeal waived).

Moreover, none of the cases cited by the Committee involve a fee application by counsel retained under Bankruptcy Code § 328, which governed Riker Danzig's retention here. To the extent any of the cases cited by the Committee address allowance of fees, they involve payment only under Bankruptcy Code § 330, which specifically <u>requires</u> an analysis of whether the fees incurred benefited the estate.[1] It is in this context that these cases looked to the specific activities undertaken by debtor's counsel and concluded that some went beyond their fiduciary duty to the estate.

---

[1] This inquiry is specifically required in Bankruptcy Code § 330, which states among the factors relevant to the calculation of the allowable fee that "the court shall not allow compensation for . . . services that were not – (I) reasonably likely to benefit the debtor's estate; or (II) necessary to the administration of the case" 11 U.S.C. § 330(a)(4)(B). In contrast, this inquiry is absent from Bankruptcy Code § 328, under which Riker Danzig was retained as <u>special litigation counsel</u> for the Debtors to pursue the Juno Action and to maximize the recovery for the Estate.

The Hon. Miriam Goldman Cedarbaum, U.S.D.J.
January 28, 2008
Page 3

Thus, because Riker Danzig was retained under Bankruptcy Code § 328 and not Bankruptcy Code § 330, none of the cases cited in the January 18 Letter Brief have any relevance to the issues here.

II. The Cases Cited by the Committee Do Not Establish That Riker Danzig Breached its Duties to the Estate or the Debtors.

As the Court recognized at argument, in our legal system, principles are derived from facts. Yet, the January 18 Letter Brief consists of little more than a collection of principles divorced from any facts. When the facts of the cases presented by the Committee are compared to the facts in this case, the irrelevance of the January 18 Letter Brief becomes even clearer.

Three of the cases cited by the Committee involve a decision on retention of counsel rather than compensation. In two of these cases, the Court decided not to authorize the retention citing a conflict of interest between the debtor and other related parties-in-interest represented by the proposed counsel. In re Adam Furniture Indus., Inc., 158 B.R. 291, 302 (Bankr. S.D. Ga. 1993) (concluding that proposed debtor's counsel held "an impermissible conflict of interest" . . . [and] an interest adverse to the estate . . . ."); In re Prudent Holding Corp., 153 B.R. 629, 632 (Bankr. E.D.N.Y. 1993) (Proposed debtor's counsel "represents interests adverse to the estate . . . and is accordingly ineligible to serve as attorneys for the Debtor."). In the third case cited by the Committee involving retention of counsel, the court concluded there was no conflict of interest. Agresti v. Rosenkranz (In re United Utensils Corp.), 141 B.R. 306, 309 (Bankr. W.D. Pa. 1992) ("We do not perceive a conflict of interest between [proposed trustee's counsel] and the Trustee in the within Adversary Proceedings absent a former attorney-client relationship between [proposed trustee's counsel] and any of the defendants.").

Another decision involved the terms upon which counsel was to be paid under the terms of his retention under Bankruptcy Code § 330. In re Pac. Forest Indus., Inc., 95 B.R. 740, 745 (Bankr. C.D. Cal. 1989) (rejecting § 330 counsel's request to receive monthly payments for invoices without submitting fee applications). Other decisions cited by the Committee are set in completely different contexts than the case here: (a) the recovery of assets transferred to the attorney pre-petition, Barr v. Weber (In re Carousel Candy Co., Inc.), 38 B.R. 927, 929-30 (Bankr. E.D.N.Y. 1984); (b) approval of a disclosure statement and confirmation of a plan, Everett v. Perez (In re Perez), 30 F.3d 1209, 1218 (9th Cir. 1994); and (c) sanctions against counsel by a creditor whose motions the counsel opposed. In re St. Stephen's 350 E. 116th St., 313 B.R. 161, 164 (Bankr. S.D.N.Y. 2004).

The Hon. Miriam Goldman Cedarbaum, U.S.D.J.
January 28, 2008
Page 4

The remaining cases that address allowance of fees fall into two broad categories: (i) counsel's actions are so unsatisfactory or unethical that it should be denied all fees for its services and (ii) counsel's fees were disproportionate to the potential benefit to the estate.

In the first category are two decisions in which debtor's counsel either completely abdicated any role in the case or substituted its own interests for those of the debtor. The first decision, In re Rivers, 167 B.R. 288 (Bankr. N.D. Ga. 1994), involved counsel that permitted a mentally incapacitated debtor to substantially ignore its financial reporting requirements in the bankruptcy case and, even worse, took advantage of the debtor's deficiencies for counsel's own benefit. Id. at 294 (discussing debtor's infrequent and irregular filing of financial reports); id. at 303 (recognizing that "the debtor is easily persuaded and controllable and the attorney for the debtor use[d] his influence over the debtor to obtain a financial advantage . . ."). The second decision, St. Stephen's, involved counsel who apparently lacked any client at all and allowed his "paralegals" – one a disbarred attorney and the other an employee whose main interest was to act as a broker for a sale of the property – to run the case and cover hearings without participation from counsel. 313 B.R. at 164 (debtors' counsel "acknowledged -- indeed, offered as an excuse -- his nearly total lack of involvement on behalf of the Debtors, including his failure to supervise the conduct of the cases by non-lawyers."). In both Rivers and St. Stephen's, counsel was denied any fee. Rivers, 167 B.R. at 307; St. Stephen's, 313 B.R. at 169.

In re Sky Valley, Inc., 135 B.R. 925 (Bankr. N.D. Ga. 1992), In re Rancourt, 207 B.R. 338 (Bankr. D.N.H. 1997) and Damon & Morey LLP v. Slater, 97-CV-0080E(M), 1998 U.S. Dist. LEXIS 341 (W.D.N.Y. Jan. 14, 1998) represent similar, though less egregious, cases. In Sky Valley, counsel failed to advise the debtor of the prohibition on distributing payments to a professional without court approval of the professional's retention and thus $40,000 was deducted from counsel's fees. 135 B.R. at 933-34. In Rancourt, the professional sought fees where environmental cleanup obligations doomed a confirmed plan but the debtor and its counsel had failed to disclose that the property could have been abandoned, relieving the estate of the cleanup obligations. Ostensibly, counsel, who represented the individual debtor in other matters, was motivated by a concern that the individual would have to bear the burden of the cleanup, rather than the estate. 207 B.R. at 362. In Damon & Morey, counsel had taken insufficient action to ascertain and protect the debtors' interest in certain property and, as a result of counsel's "disarray, inattention, a cavalier attitude towards the dangers lurking in the complex facts and issues in their charge, and a totally unjustified (almost delusional) confidence that nothing could go wrong," the court limited counsel's

compensation to a "basic fee" and expenses. Id. at *11-12. In this case, the professional's fees were cut by almost half.

This category of cases is wholly inapplicable here. There is no allegation and no proof that Riker Danzig substituted its own judgment or interest for that of the estate or that the Debtors' principals were incompetent. The Committee's disagreement with the Debtors' view of the value of the claims does not render Riker Danzig's retention improvident, especially given that the Bankruptcy Court noted the settlement may be "right at" the lowest point in the range of reasonableness and continued litigation in the Juno Action "could have brought more." See Confirmation Hrg. Tr. at 217:23-25, J.A. A-1345; Confirmation Hrg. Tr. at 212:-20-21; J.A. A-1340. To the contrary, the Bankruptcy Court observed that Riker Danzig's services were satisfactory, even creative, and exactly what contingency fee counsel would be expected to do. See Fee Ruling Tr. at 13:10-14, J.A. A-1690; Fee Application Hrg. Tr. at 26:25-27; 27:4-7; J.A. A-1651 to A-1652; see also Appellant's Reply Brief at 21.

To the extent the Committee asserts that the Debtors breached their fiduciary duties, and Riker Danzig somehow was bound to disclose this breach, it is noteworthy that the Committee failed to assert this as a basis for disallowing or reducing the claims of the Debtors' principal bankruptcy counsel, Douglas T. Tabachnik, Esq., who had an equal, if not greater, obligation to advise the Debtors of their fiduciary duties and act if they were failing to properly perform those duties.[2] In addition, the Committee itself never sought to remove or replace the Debtors' principals, suggesting that it found no basis for removal, despite having full knowledge of every aspect of the Juno Action and having been present at and billed the Estate for its attendance at all of the depositions that Riker Danzig undertook in the Juno Action.[3] Significantly, the Second Circuit affirmed that the Debtors' actions were consistent with their duties. Smart World Techs., LLC v. Juno Online Servs., Inc. (In re Smart World Techs., LLC), 423 F.3d 166, 177, 179-80 (2d Cir. 2005); see also Appellant's Reply Brief at 21.

The remaining cases cited by the Committee denied only certain fees sought by counsel because they found those specific activities failed on a cost benefit basis.

---

[2] In fact, the Committee altogether failed to object to the fee application of Douglas T. Tabachnik, Esq.

[3] In fact, one of the cases cited in the January 18 Letter Brief expressly recognizes the Committee's vital role in monitoring the Debtors' adherence to their fiduciary duties. In re Pac. Forest Indus., Inc., 95 B.R. 740, 743-44 (Bankr. C.D. Cal. 1989) ("Through the system of creditors' committees and the United States Trustee, each debtor-in-possession will be carefully monitored and motions to convert or to dismiss as to those who abuse the system or cannot reorganize will be promptly heard by the Court.") (emphasis added).

In re Keene Corp., 205 B.R. 690, 696 (Bankr. S.D.N.Y. 1997) ("[T]he debtor's attorney must 'make a careful judgment whether the number of billable hours the he would be investing was commensurate with the expected gain.'") (emphasis added); In re Taxman Clothing Co., 49 F.3d 310, 315 (7th Cir. 1995) ("This duty placed [counsel] under an obligation . . . to abandon the preference suit once it became reasonably obvious that further investigation would cost more than it was likely to bring into the estate."); In re Allied Computer Repair, Inc., 202 B.R. 877 (Bankr. W.D. Ky. 1996) ("[T]he trustee and counsel must occasionally forbear the collection of an asset when the cost of collecting such asset is unbalanced against its value to the estate."). Of a similar vein is Zeisler & Zeisler, P.C. v. Prudential Ins. Co. of Am. (In re JLM, Inc.), 210 B.R. 19 (B.A.P. 2d Cir. 1997), wherein the debtor's secured creditor took control of its stock by enforcing its rights against the debtor's principals and then sought to dismiss the debtor's case to protect the secured creditor's lapsed security interest. Reversing and remanding a denial of counsel's fees for opposing the secured creditor's motion, the bankruptcy appellate panel noted, "[i]f there is a reasonable basis for contending that the estate will benefit by opposing conversion or taking a position on other control-related matters, compensation will not be denied." Zeisler, 210 B.R. at 25.

Because these cases all involved allowance under Bankruptcy Code § 330 which, as noted supra n.1, specifically requires that the professional's services be "reasonably likely to benefit the debtor's estate" or "necessary to the administration of the case," they simply are inapplicable to this case in any event. Given the pre-approved § 328 contingency fee arrangement here, there was no chance that Riker Danzig's fees could be more than the estate recovered from the Juno Action. Riker Danzig could only recover its out of pocket expenses (here $73,981.18) and its contingency fee. At the same time, Riker Danzig bore all of the risk associated with prosecuting the Juno Action, since Riker Danzig would receive no fee if there was no recovery in the Juno Action. Moreover, the Debtors and Riker Danzig believed, as the Bankruptcy Court acknowledged, that continued litigation could have led to a greater recovery. While the prospect of a greater recovery did not push the settlement below "the lowest point in the range of reasonableness," aggressively litigating the Juno Action in an attempt to realize that potential certainly does not constitute a breach of duty by the Debtors or Riker Danzig particularly where, as the Second Circuit recognized, there was no additional cost to continuing the litigation in view of the contingency fee arrangement.

The Hon. Miriam Goldman Cedarbaum, U.S.D.J.
January 28, 2008
Page 7

CONCLUSION

The Committee's contrived and specious argument that Riker Danzig should not receive its Court-authorized and well-deserved contingency fee should be seen for what it is -- a last-ditch effort to justify the Bankruptcy Court's erroneous finding that there were developments not capable of being anticipated which rendered Riker Danzig's retention improvident. Not only did the Committee fail to raise, and the Bankruptcy Court fail to find, that Riker Danzig or the Debtors breached any fiduciary duty it might have owed, but there is absolutely no support in the record for the Committee's eleventh-hour accusation. Instead, the Committee peppers this Court with inapposite case law that is both factually distinguishable and, importantly, was decided in the context of § 330 counsel where an analysis of whether counsel's fees benefited the estate is required by the court. Here, Riker Danzig was pre-approved as § 328 special litigation counsel to do exactly what the Bankruptcy Court found that it did -- vigorously pursue the Juno Action in order to maximize the recovery for the Estate.

The real issue on appeal is whether the Bankruptcy Court erred in concluding that there were developments not capable of being anticipated that rendered Riker Danzig's § 328 retention improvident. As aptly demonstrated in Riker Danzig's opening and reply briefs and during argument, this conclusion was erroneous. As a result of Riker Danzig's efforts, and the resulting $6.5 million recovery by the Estate, and for those reasons set forth in Riker Danzig's opening and reply briefs, and those presented at argument, Riker Danzig respectfully requests that this Court reverse the Bankruptcy Court's decision and allow it the full amount due under its Revised Contingency Proposal.

Respectfully submitted,

*J. Alex Kress /SHL*
J. Alex Kress

cc: Laurence May, Esq. (via e-mail and overnight mail)
Bonnie L. Pollack, Esq. (via e-mail)
Pamela Smith Holleman, Esq. (via e-mail)
Douglas T. Tabachnik, Esq. (via e-mail)
Brian Masumoto, Esq. (via fax)